**UNITED STATES of America,**

v.

**Leonardo GERINSON, Defendant.**

No. 03 CR. 1211(RWS).

United States District Court,
S.D. New York.

April 10, 2006.

Honorable Michael J. Garcia, United States Attorney for the Southern District of New York, by W.S. Wilson Leung, Assistant U.S. Attorney, Of Counsel, New York, NY.

B. Alan Seidler, Esq., New York, NY, for Defendant.

*OPINION*

SWEET, District Judge.

The defendant Leonardo Gerinson ("Gerinson") has moved to enforce the specific terms of the Cooperational Plea Agreement of January 13, 2004 (the "Agreement") between Gerinson and the United States Attorney for the Southern District of New York. In the alternative, Gerinson seeks a hearing before the Court to prove that he did not lie in connection with his cooperation agreement.

For the reasons set forth below, the motion is denied.

***Background***

On October 9, 2003, the United States filed an indictment against Leonardo Gerinson, charging: (1) conspiracy to distribute heroin, cocaine, and cocaine base from at least April 2003 through September 2003; (2) distributing, on or about May 13, 2003, more than 50 grams of cocaine base;

and (3) distributing, on or about September 25, 2003, more than 100 grams of heroin.

Following his arrest and indictment, Gerinson and Robert Baum, Esq., his attorney at the time, met with the Government on two occasions in order to offer his cooperation to the Government in the investigation of others. During these proffer sessions, the Government, among other things, asked Gerinson to report any and all criminal conduct in which he had been engaged. In addition to the narcotics-trafficking charged in the indictment, Gerinson admitted to daily marijuana use and reported arrests in April and September 2003 for possession of marijuana. Gerinson specifically denied any other criminal conduct.

Based on the information provided by Gerinson during these proffer sessions, the Government entered into a cooperation/plea agreement with Gerinson on January 13, 2004. Pursuant to this agreement, Gerinson pled guilty to a Superseding Information that added a forfeiture allegation to the three counts of the original indictment. The agreement provided that "if this Office determines that the defendant has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, this Office will file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), requesting the Court to sentence the defendant in light of the factors set forth in Section 5K1.1 (a)(1)-(5)." Among the obligations to which Gerinson agreed was to "truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which this Office inquires of him."

With respect to the Government's obligation to file a Section 5K1.1 letter, the agreement also specifically provides:

It is understood that, should this Office determine either that the defendant has not provided substantial assistance in an investigation or prosecution, or that the defendant has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle the defendant to withdraw his guilty plea once it has been entered.

Several months following Gerinson's guilty plea, the Government received information from a confidential source that Gerinson had been involved in several robberies, crimes which had never been disclosed to the Government during Gerinson's proffer sessions. Around approximately the same time period, Mr. Baum contacted the Government and advised the Government that Gerinson had additional criminal conduct to disclose.

On or about July 21, 2004, Gerinson met with the Government to discuss the additional disclosures he wished to make. Prior to this meeting he discharged Mr. Baum and hired Alan Seidler, Esq., who was present at the meeting. During this meeting, Gerinson admitted to additional criminal conduct that he had not previously disclosed, including four robberies in 2003.

After the July 21, 2004 proffer session, the Government re-investigated Gerinson's background. Johnny Ozuna ("Ozuna"), who was also cooperating with the Government at that time, confirmed one of the robberies Gerinson disclosed on July 21, 2004. In addition, Ozuna allegedly advised the Government that in 2003, he asked Gerinson to get a gun for him so that he could use it to collect a drug debt. Ozuna

allegedly reported that Gerinson was able to get a small, rusted pistol for him.

The Government met with Gerinson two additional times, once on September 29, 2004 and once on March 21, 2005, in order to confront Gerinson about Ozuna's claim that Gerinson provided him with a gun in 2003 and about Gerinson's lack of candor in his earlier proffer sessions. During both sessions, Gerinson denied supplying any gun to Ozuna. According to the Government, Gerinson also failed to provide any explanation for his failure prior to July 21, 2004 to disclose his participation in four robberies.

On August 18, 2005, the Government advised Mr. Seidler that it considered Gerinson in breach of his cooperation agreement and that it would not be seeking a downward departure pursuant to Section 5K1.1 on Gerinson's behalf. The Government advised Mr. Seidler that it considered Gerinson in breach due to his failure to disclose his participation in the robberies and his continued denial of providing Ozuna with a gun. Gerinson, continues to deny that he ever provided Ozuna with a gun.

Gerinson moved on January 23, 2006 to enforce the specific terms of his cooperation agreement, and to compel the Government to file a Section 5K1.1 letter on his behalf. In the alternative, he moves this Court to hold a hearing wherein he may be afforded the opportunity to prove that he did not lie in connection with his plea agreement.

### Discussion

"Cooperation agreements, like plea bargains, are interpreted according to principles of contract law." *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990),

cert. denied, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). In accordance with contract law principles, courts confronting an alleged breach of a cooperation agreement employ a subjective standard of good faith. While a prosecutor is afforded wide discretion, his or her refusal to make a substantial assistance motion pursuant to Section 5K1.1 may not be a product of invidious discrimination or bad faith. *Id.* "[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied." *Rexach*, 896 F.2d at 713.

The Government's articulated reason for its refusal to file a Section 5K1.1 letter is that Gerinson "lied at some point during [his] proffer sessions." According to Gerinson, the Government's failure to provide him with "further details" concerning his breach amounts to bad faith. Specifically, the Government says that it considers Gerinson in breach of his cooperation agreement due to his failure to disclose four different robberies prior to entering the agreement and due to his denial of his complicity in providing a gun to Johnny Ozuna in July of 2003.

Given the timing of events, it does appear that the Government's decision not to make a substantial assistance motion on Gerinson's behalf is predicated principally on Gerinson's alleged failure to disclose his involvement in obtaining the gun for the July 2003 incident with Johnny Ozuna, as opposed to on the other robberies Gerinson initially failed to disclose.[1] However, regardless of which, if not both, of these reasons motivated its decision, the Govern-

---

1. Gerinson admitted to the four robberies on July 21, 2004. It wasn't until thirteen months later, on August 18, 2005, that the Govern-

ment told Gerinson that it would not be seeking a downward departure.

ment's conduct here does not amount to bad faith.

First, it is uncontested that Gerinson did not provide information to the Government regarding four robberies in which he was involved until six months after he signed the cooperation agreement. By the explicit terms of the cooperation agreement outlined above, Gerinson's failure to "truthfully and completely disclose all information" regarding his criminal conduct amounts to a violation of the cooperation agreement. Therefore, based upon Gerinson's failure to disclose the robberies alone, the Government appears to have grounds to withdraw its agreement to provide a Section 5K1.1 letter on Gerinson's behalf. At the least, it cannot be said that the Government is acting in bad faith, given Gerinson's breach.

Additionally, even assuming arguendo the Government's decision with withdraw the Section 5K1.1 letter was based solely upon the information obtained from Ozuna regarding Gerinson allegedly providing Ozuna with a gun in 2003, such grounds still do not constitute bad faith on the part of the Government. Whether or not Gerinson actually did provide Ozuna with a gun in 2003, it is uncontested that the Government believes that he did. While this issue certainly appears to boil down to a credibility determination, Gerinson has neither argued nor introduced any evidence to demonstrate that the Government does not honestly believe Ozuna's version of events. In other words, Gerinson contests the Government's credibility determination and argues that Ozuna is lying about the above series of events, but he does not point to facts indicating that the Government has made its decision to believe Ozuna in bad faith. Accordingly, because this "Court's role is limited to deciding whether the prosecutor has made its

determination in good faith," this is the end of the inquiry.

In the alternative, Gerinson moves for a hearing to determine who is telling the truth—Ozuna or Gerinson.

Once a defendant makes a claim that the Government has acted in bad faith, the Government may rebut this allegation by explaining its reasons for refusing to depart. In order to be entitled to a hearing on the issue, the defendant must then make a showing of bad faith. *United States v. Reeves*, No. 96 Cr. 325(LAP), 1999 WL 595639, at *3, 1999 U.S. Dist. LEXIS 12162, at *10 (S.D.N.Y. Aug. 6, 1999) (citations omitted). "Unless the Government's reasons are wholly insufficient or unless the defendant's version of events, supported by at least some evidence, contradicts the Government's explanation, no hearing is required. Very rarely and under only extreme circumstances is a hearing warranted." *Id.* at *4, 1999 U.S. Dist. LEXIS 12162, at *11.

For reasons similar to those stated above, a hearing also is not warranted. First, even assuming the Court were to determine at a hearing that Gerinson did not provide Ozuna with a gun in 2003, the Government would still have grounds not to seek a departure on Gerinson's behalf, based upon Gerinson's failure to fulfill the promise that he'd disclosed all of his criminal conduct upon entering the cooperation agreement.

In addition, as noted, the issue before the Court is limited to whether the Government has acted in bad faith. A determination that Gerinson did not in fact provide Ozuna with a gun in 2003 does not amount to a determination that the Government acted in bad faith in its decision to credit Ozuna's version of events, and not Gerinson's. Accordingly, because a hearing would not change this Court's analysis, no hearing is required.

### Conclusion

For the reasons set forth above, Gerinson's motion to enforce the specific terms of his cooperation agreement with the Government is denied. Gerinson's motion for a hearing is also denied.

It is so ordered.